# In the United States Court of Federal Claims

No. 03-2820 V

(Filed October 19, 2012)

HARRY TEMBENIS and GINA )
TEMBENIS, administrators of the )
estate of ELIAS TEMBENIS, )
deceased, )
                        Petitioners, )
                              v. )
SECRETARY OF THE DEPT. OF )
HEALTH AND HUMAN )
SERVICES, )
                       Respondent. )

*Ronald C. Homer*, Boston, MA, for petitioners.

*Ryan D. Pyles*, *Lisa A. Watts,* Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. With him on the briefs were *Stuart F. Delery*, Assistant Attorney General, *Rupa Bhattacharyya*, Director, *Vincent J. Matanoski*, Acting Deputy Director and *Catharine E. Reeves,* Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, DC.

## ORDER

**Merow**, *Senior Judge.*

This National Childhood Vaccine Injury case was initiated on December 16, 2003, when Harry Tembenis filed a Petition for Vaccine Compensation on behalf of his son, Elias Tembenis. (ECF No. 1.) This was followed by an Amended Petition (ECF No. 14) alleging that a Diptheria-Tetanus-acellular-Pertussis ("DTaP") vaccination administered on December 26, 2000, caused Elias to develop a seizure disorder that led to his death on November 17, 2007, when he was seven years old. The caption of the case was amended on November 13, 2008, to name Harry and Gina Tembenis, administrators of Elias' estate, as petitioners.

The special master proceeded to determine that the DTaP vaccine Elias received on December 26, 2000, was the cause of his epilepsy and resulting death. *Tembenis v. Sec'y of HHS*, No. 03-2320 V, 2010 WL 5164324 (Nov. 29, 2010). The parties were able to reach agreement on damages comprising the $250,000 death benefit (42 U.S.C. § 300aa-15(a)(2)), and $175,000.00 for actual pain and suffering and past unreimbursable expenses (42 U.S.C. § 300aa-15(a)(4)). Agreement could not be reached on recovery of lost future earnings pursuant to 42 U.S.C. § 300aa-15(a)(3)(B). The special master, after receiving briefing from the parties, issued a comprehensive ruling concluding that the plain language of 42 U.S.C. § 300aa-15(a)(3)(B) provides that damages be awarded to petitioners for the lost wages that could have been anticipated had Elias survived to adulthood and beyond, based on the severity of his injury following vaccination. *Tembenis v. Sec'y of HHS*, No. 03-2820V, 2011 WL 5825157 (October 26, 2011).

Following the special master's ruling, respondent maintained her position opposed to an award of future lost earnings to Elias' estate but proffered the sum of $659,955.61, agreed to by petitioners, for lost earnings, reserving the right to seek review of the special master's ruling, granting damages of $1,084,955.61 which includes the $659,955.61. (Resp't's Proffer 2, ECF No. 77.) The Special Master's Decision (ECF No. 78), filed July 31, 2012, awarded petitioners a lump sum payment of $1,084,955.61.

Respondent filed a Motion for Review asserting that "[t]he Special Master erred in ruling that the estate of a child who died as the result of a vaccine-related injury is entitled to the child's prospective lost earnings." (Resp't's Mot. for Rev. 1, ECF No. 79.) Petitioners' Response concludes "the Special Master's Ruling that Elias' estate is entitled to compensation for his lost earning capacity rests on the plain language of § 15(a)(3)(B) as well as binding Federal Circuit decisions, and is therefore not contrary to law."[1] (Pet'rs' Resp. 21-22, ECF No. 83.)

Upon analysis of 42 U.S.C. § 300aa-15(a)(3)(B), the special master's October 26, 2011 ruling, and the briefs submitted by petitioners and respondent. It is concluded that the special master's ruling is correct, with the result that pursuant to

---

[1] Petitioners have also filed a separate "Motion for Partial Summary Affirmance" seeking an "Order authorizing the payment of the uncontested portions of compensation, as awarded by the Special Master." (Pet'rs' Mot. 5, ECF No. 84.) Respondent opposes this motion. (ECF No. 85.)

42 U.S.C. § 300aa-12(e)(2)(A) the July 31, 2012 decision is sustained.

The statutory provision at issue, 42 U.S.C. § 300aa-15(a)(3)(B) provides:

   (B) In the case of any person who has sustained a vaccine-related injury before attaining the age of 18 and whose earning capacity is or has been impaired by reason of such person's vaccine-related injury for which compensation is to be awarded and whose vaccine-related injury is of sufficient severity to permit reasonable anticipation that such person is likely to suffer impaired earning capacity at age 18 and beyond, compensation after attaining the age of 18 for loss of earnings determined on the basis of the average gross weekly earnings of workers in the private, non-farm sector, less appropriate taxes and the average cost of a health insurance policy, as determined by the Secretary.

Respondent bases her position opposed to recovery of lost earnings compensation on the fact that Elias, a minor, died as a result of his vaccine-related injury, before he obtained an award. (Resp't's Brief 3-4, ECF No. 79.)[2] This position is adopted in a prior ruling by another special master. *See Sarver v. Sec'y ofHHS*, No. 07-307V, 2009 WL 8589740 (Nov. 16, 2009)[3]

---

   [2] Respondent also argues that awarding compensation for lost earnings would duplicate the $250,000 statutory award for death under 42 U.S.C. § 300aa-15(a)(2). (Resp't's Brief 9-10, ECF No. 79.) This position is foreclosed by the ruling in *Zatuchni v. Sec'y of HHS*, 516 F.3d 1312 (Fed. Cir. 2008).

   [3] While adopting the position that the vaccinee's death precludes compensation for lost earnings, the special master in *Sarver* recognized the restrictive nature of the ruling stating:

       The result in this case may appear to be arbitrary in that if Erica had lived until there was a decision awarding the Sarvers compensation for Erica's vaccine-caused illness, the Sarvers could legitimately claim (and probably be awarded) compensation for Erica's loss of earning capacity pursuant to section 15(a)(3)(B). It is only because Erica has died that the Sarvers are precluded from receiving this compensation. The fact that Erica's death, itself, was caused by the vaccine may seem to increase the unfairness. Certainly, the Sarvers['] claim for compensation has a compelling emotional component.

2009 WL 8589740 at *10.

Contrary to the respondent's position and the ruling in *Sarver*, section 15(a)(3)(B) plainly states that a vaccinee's injury, serious enough so that it could be anticipated to cause impaired earning capacity at age 18 and beyond calls for recovery of compensation for lost earnings.

The special master expressed the matter in her ruling as follows:

(1) As in Zatuchni, the plain and natural meaning of section 15(a)(3)(B) contradicts the Secretary's arguments. The provision states that if a vaccinee's injury is severe enough that it could be anticipated to cause a person at age 18 to suffer lost wages, compensation should be awarded. See Edgar v. Sec'y of Dep't of Health & Human Servs., 989 F.2d 473 (Fed. Cir. 1993), (holding that compensation for loss of earnings may not be diminished in the event of the vaccinee's premature death). There is no requirement, express or implied, that a vaccinee must actually survive to age 18, or be found likely to survive, to obtain compensation.

(2) The Secretary's interpretation does not give effect to the plain meaning of the words Congress used and the context in which they appear. The language concerning "anticipation" must be read in conjunction with the language concerning the "severity of the injury" suffered and the lost earning "capacity." Instead, the Secretary isolates the phrase "impaired earning capacity at age 18," to conclude that a child who does not survive to age 18 should receive no compensation for lost earnings. This distorts the provision by omitting key concepts. The statute on its face requires that in the case of a minor vaccinee the severity of the injury must be considered at the time of the award to anticipate loss of earning capacity. The language does not imply that survival to the age of 18 must be anticipated.

The Secretary's interpretation also distorts the plain meaning by adding to the words a concept that Congress did not include – the necessity for actual lost earnings. The Secretary argues, "Because Elias' death at age seven years effectively forecloses the possibility of him ever having suffered an actual loss of earning capacity, petitioners are not entitled to receive an award for his lost earnings under the statute."

Resp't Br. at 5 (emphasis in original).  When Congress meant to restrict the compensation available under section 15(a) to amounts actually incurred, it said so explicitly.  See §§ 300aa-15(a)(1)(A) and (B) (compensating for "actual unreimbursable expenses").  One must assume, therefore, that omission of the word "actual" from the text of section 15(a)(3)(B) was deliberate.

2011 WL 5825157, at *2 (Oct. 26, 2011).

As the language of section 15(a)(3)(B) "[i]s clear and fits the case, the plain meaning of the statute will be regarded as conclusive." *Norfolk Dredging Co. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004); *Hall v. United States*, 677 F.3d 1340, 1345 (Fed. Cir. 2012).  That is also the circumstance present here, the plain meaning is conclusive, and it is **ORDERED** that Respondent's Motion for Review is **DENIED** and the Special Master's Decision awarding compensation of $1,084,955.61 is **SUSTAINED** with judgment to be so entered.[4]

s/ James F. Merow
James F. Merow
Senior Judge

---

[4] Absent the filing of a Petition for Review pursuant to 42 U.S.C. 300aa-12(f) which would then place the matter in the United States Court of Appeals for the Federal Circuit, petitioners will obtain payment of the full amount.  Their Motion for Summary Affirmance (ECF No. 84) has, with this Order, become moot and is, therefore, **DENIED**.